Rene L. Valladares
Federal Public Defender
Nevada State Bar No. 11479
Erin Gettel
Amy B. Cleary
Sylvia Irvin
Assistant Federal Public Defenders
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577
Erin_Gettel@fd.org
Attorneys for Tyree Walker

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| United States of America, | Case No. 2:20-mj-00464-BNW |
| Plaintiff, | **Emergency Motion for Immediate Release** |
| v. | |
| Tyree Walker, et. al., | |
| Defendant. | |

Following their arrests for arson-related offenses during a protest of the police murder of George Floyd, Tyree Walker and Ricardo Densmore were ordered released on conditions after a lengthy detention hearing. The government moved to emergently stay their release pending its appeal of the release order, which this Court granted 30 minutes later, at 10:07 p.m. on a Friday night. The government provides no authority supporting its request for an emergency stay. This Court should thus immediately grant Walker's immediate release by reinstating the Magistrate Judge's release order pending adjudication of the government's appeal of that order through the proper course.

**Background**

Tyree Walker, Devarian Haynes, and Ricardo Densmore are charged with arson and conspiring to commit it. The charges stem from the May 31, 2020, burning of an unoccupied Las Vegas Metro patrol car during a local protest over the police murder of George Floyd in Minnesota. Three days later, police arrested Walker at a Chevron in Henderson, where he worked as a cashier, and executed a search warrant at his apartment. Police also arrested Haynes and Densmore. According to the federal complaint, Walker, Haynes, and Densmore all confessed following their arrests.

Two days later, on Friday June 5th, the three young men appeared in federal court, and undersigned counsel[1] was appointed to represent Walker. Walker interviewed with Pretrial Services. Afterward, the Pretrial Officer made a "recommendation for release [] contingent upon verification of [Walker's] background information."[2] This was because Walker's roommate (and half-brother) Anthony was unwilling to speak with undersigned counsel or Pretrial Services to verify Walker's information or whether he could return to their shared apartment as he feared doing so would somehow associate him with this case and get him into trouble. Nonetheless, Pretrial Services confirmed that the address Walker provided was associated with him, and this was the same apartment at which police executed the search warrant.

The government moved to detain all three men. As to Walker, although Judge Weksler agreed the charged offenses were serious, she found conditions could be fashioned to reasonably assure his appearance and the safety of the community. Thereafter, much of the discussion revolved around Pretrial

---

[1] References to undersigned counsel herein are to AFPD Erin Gettel.
[2] Pretrial Services Report at 7.

Service's inability to verify whether Walker could in fact return to the apartment he shared with Anthony or if there was another residence he could stay. Given the uncertainty at that point, Judge Weksler indicated she would order Walker released to the halfway house on Monday morning, where he would be placed on home detention. Undersigned counsel represented that Walker believed he could reside with his uncle but did not know his phone number by heart. The undersigned requested that the hearing be briefly continued to arrange for a release plan, which Judge Weksler granted. During the continuance, the undersigned left Walker's mother a voicemail and unsuccessfully tried, again, to reach Anthony.

When Walker's case was recalled, the undersigned again requested his immediate release, arguing Walker should not be required to remain in custody over the weekend. Judge Weksler remained steadfast that Walker would remain in custody until released to the halfway house on Monday given the lack of third-party verification of another residence where he could stay. At the hearing's end, the undersigned realized that Walker's mother Cynthia Braud had returned counsel's call. After being granted a brief indulgence to call and speak with Ms. Braud, the undersigned obtained permission from Judge Weksler for Ms. Braud to call into the hearing. Ms. Braud called into hearing, identified herself, confirmed she had spoken with Tyree's Uncle James, and confirmed that Tyree could in fact stay at his uncle's home over the weekend.

In light of this verification and after numerous very stern warnings, Judge Weksler ordered Walker be released to his uncle's home and to report to Pretrial Services first thing Monday morning for installation of location-monitoring equipment. The government orally moved for a stay of the release order, which Judge Weksler denied. Walker's detention hearing concluded at around 7:30 p.m.

3

Two hours after the detention hearing concluded, the government filed its "Emergency Motion for Stay of Magistrate Judge's Release Orders Pursuant to 18 U.S.C. § 3145(a)."[3]  This Court granted the stay less than 30 minutes later.[4] While the undersigned has not yet been able to speak with Walker, it is believed he and Dinsmore were midway to Las Vegas in a CCA van when it abruptly turned around.  They were not told why.

## Argument

**A.      This Court should order Walker's immediate release because the government provides no authority supporting its request for an emergency stay.**

The government expends little effort on the very critical procedural question of whether this Court has the authority to grant an emergency stay of a magistrate judge's release order pending appeal to the district judge.  Under the circumstances of this case, it does not.

The caption of the government's motion states that it is brought "Pursuant to 18 USC § 3145(a)."  That subsection reads:

> **§ 3145.   Review and appeal of a release or detention order**
>
> (a) Review of a release order.—If a person is ordered released by a magistrate judge, or a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court—
>
> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release; and

---

[3] ECF No. 6.
[4] ECF No. 7.

4

> (2) the person may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release.
>
> The motion shall be determined promptly.

Section 3145 does not authorize an emergency stay of a release order pending review by a district judge in the circumstances that occurred here, especially where the defense had no opportunity to respond. Nor does this procedure find any support in this District's local rules governing review of release and detention orders.[5] This procedure also makes little sense from a practical perspective: if this type of practice is permitted to stand, all defendants ordered detained could simply request an emergency stay of the detention order pending review by the district judge and could remain at liberty pending that review (assuming the stay is granted), without even giving the government an opportunity to respond. The government would surely object to such a practice.

The only in-Circuit case the government cites to support its request is *United States v. Fernandez-Alfonso*,[6] which simply held the district court's 30-day delay in determining the defendant's appeal of his detention order violated 3145(b)'s requirement that the appeal be determined "promptly." But *Fernandez-Alfonso* hurts rather than helps the government's position. The *Fernandez-Alfonso* Court reasoned: "The legislative history of section 3145(b) reveals that the addition of a time mandate, or 'promptness' requirement, was 'designed to

---

[5] LCR 12-3 governs motions for review of a release or detention order. It provides that such motions should be served "without undue delay" and that responses are due within 14 days, with no replies without leave of court. The rule does provide for application of, or grant of, a stay.

[6] 813 F.2d 1571, 1572 (9th Cir. 1987).

5

facilitate speedy review if relief is to be effective."[7] In other words, the promptness requirement is precisely why a stay is *not* appropriate because the promptness requirement itself ensures that appeals of release or detention orders will not be rendered illusory.

Congress was well aware that without a promptness requirement, district court review would not be effective and, rather than providing a procedure for stays in the statute, it included a promptness requirement instead. The government has provided no authority for the stay procedure it requested and that this Court has now imposed, and it conflicts with the plain text and legislative history of § 3145.

The only support the government finds for its position is the Fifth Circuit's decision in *United States v. Brigham*.[8] The *Brigham* court's analysis is thin and provides no authority supporting its conclusion. The court stated simply:

> Brigham correctly argues that § 3145 does not expressly authorize a stay. Nevertheless, . . given that the issue being reviewed involves a person's release from custody pending further legal proceedings, the absence of stay authority could render the district court's review power illusory. Specifically, if the district court disagrees with the magistrate judge's determination regarding release versus detention, but no stay is in place, the person in question may have harmed the community or disappeared by the time the district court's ruling is rendered and detention is ordered.[9]

---

[7] *Id.* at 1572.

[8] ECF No. 6 at 5 (citing *United States v. Brigham*, 569 F.3d 220, 230 (5th Cir. 2009).

[9] *Brigham*, 569 F.3d at 230.

6

The *Brigham* court's holding is one-sided: only the government may obtain a stay of a release order because without one, there *could* be irreparable injury, but a defendant could not do the same even though there would be *actual* irreparable harm suffered from the liberty interests lost through detention. Nothing in § 3145's text or its legislative history suggests Congress intended to give the government greater protections in appealing release orders than a defendant in appealing detention. Indeed, it appears the opposite is true.

*Fernandez-Alfonso* reasoned, in interpreting § 3145's promptness requirement, "[t]he Act's procedural safeguards serve the important purpose of protecting the liberty interest of presumably innocent pretrial detainees."[10] In enacting the provisions for pretrial detention,

> Congress recognized the severe deprivation of the liberty of one not yet proven guilty, and therefore presumed innocent, who is detained prior to trial. As a result of this recognition, it took great care to set up adequate procedural safeguards so as to guarantee fairness to those against whom pretrial detention is sought.[11]

*Brigham* thus not only has no precedential value to this Court, its analysis is unpersuasive and unsupported by the text and legislative history of § 3145. It is also patently unfair in its failure to even recognize the irreparable harm caused by infringing on the liberty interest of pretrial detainees who have not been convicted of any crime.

Moreover, the defendant in *Brigham* was alleged to have violated his supervised release conditions.[12] And while the many flaws in *Brigham*'s analysis

---

[10] *Alfonso*, 813 F.2d at 1572.

[11] *Id.* (internal citation and quotation marks omitted)

[12] *Brigham*, 569 F.3d at 223.

7

remain regardless of the status underlying proceedings, there is a fundamental difference between a defendant who has previously been convicted of a criminal offense and Walker, a pretrial detainee who has been convicted of nothing and must be presumed innocent.

Because the government has provided no authority to support the stay of the release order it has received from this Court, this Court should order Walker's immediate release under the conditions set by Judge Weksler.  The government's appeal of the release order can then be determined promptly with the release order in place.

B.  **Judge Weksler correctly determined release with conditions is appropriate in this non-presumption case.**

In support of its request for a stay, the government makes a series of misrepresentations and omissions.  For example, the government improperly represents that "Pretrial was not able to verify an occupant" at the apartment Walker reported living at with his half-brother.[13]  The government omits that police executed a search warrant at this apartment, indicating police likely represented to the issuing judge it was Walker's.[14]  The government also omits that Pretrial Services conducted a public record search through Lexis Nexis linking Walker to the same apartment address from March 2019 to April 2020.[15]

---

[13] ECF No. 6 at 6.

[14] The government has not provided undersigned counsel a copy of the search warrant, but the government admitted at the detention hearing that police did execute a search warrant at this apartment.  Based on my experience, the affidavit in support would have needed to link this apartment to Walker.  The search warrant return, which is in the government's possession, likely includes information confirming the apartment was in fact Walker's residence and that police found his personal items there.

[15] Pretrial Services Report at 1.

8

The government also improperly represents that "Walker claimed to have employment at a gas station, but upon contact by Pretrial Services, the owner stated that Walker had worked there in the past but was not welcome to return."[16] The government omits that Walker was arrested at this very gas station, and was working there up until his arrest. Somewhat understandably, it appears Walker employer does not want him to return due to the scene police caused in arresting him. But this does not indicate, as the government implies through its omissions, that Walker was dishonest about his employment.

Finally, the government improperly represents that "Pre-Trial Services also recommended detention as to all defendants."[17] Pretrial's recommendation stated only: "Pretrial Services has unresolved concerns about the inability to verify the defendant's background information. Therefore, based upon our concerns a recommendation for release is contingent upon verification of the defendant's background information."[18] This language is not a recommendation for detention. Pretrial's recommendation for release was merely contingent on verifying Walker's background information.

Because of the manner in which the government proceeded, however, the defense could not address any of the government's misrepresentations and omissions before the stay was issued.

As this Court knows, the Bail Reform Act expressly provides that a defendant *shall* be released pending trial unless the Court finds release "will not reasonably assure the appearance of the person as required or will endanger the

---

[16] ECF No. 6 at 6.
[17] ECF No. 6 at 3.
[18] PSR at 4.

9

safety of any other person or the community."[19]  "Only in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant."[20]  Judge Weksler thoughtfully considered all of the § 3142(g) factors and found release on conditions was appropriate.

Since the hearing, undersigned counsel has personally spoken with Walker's Uncle James and Aunt Geraldine with whom Walker would be staying once released.  Both have verified that Walker is welcome in their home, that Walker has lived in Las Vegas his entire life, and that Walked would appear as ordered.  Undersigned counsel has also personally spoken with Walker's mother Claudia Braud, who, as explained above, called into the detention hearing and explained that Walker could stay in his Uncle James's home.  The undersigned has already provided the contact information and full names of all three of these third parties to Pretrial Services for verification.

## Conclusion

The government has provided no support for the stay procedure it employed in this case and that this Court authorized, resulting in Walker's illegal detention.  Following the appeals procedure set forth in § 3145 will not render the government's right to appeal the Magistrate Judge's release order illusory.  However, if this procedure is permitted to stand, the ability of Magistrate Judges to issue release and detention orders in this district will become illusory resulting in irreparable harm to defendants' fundamental liberty interests without due process of law.

---

[19] 18 USC § 3142(b).

[20] *United States v. Santos-Flores*, 794 F.3d 1088, 1091–92 (9th Cir. 2015).

Respectfully submitted,

Rene L. Valladares
Federal Public Defender

By:
*/s/ Erin Gettel*
*/s/ Amy Cleary*
*/s/ Sylvia Irvin*
Erin Gettel, Assistant Federal Public Defender
Amy B. Cleary, Trial Unit Appellate Chief
Sylvia Irvin, Trial Unit Chief

11

## CERTIFICATE OF ELECTRONIC SERVICE

The undersigned hereby certifies that she is an employee of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on June 6, 2020, she served an electronic copy of the above and foregoing Emergency Motion for Immediate Release by electronic service (ECF) to the persons named below:

Nicholas A. Trutanich
United States Attorney
Stephanie N. Ihler
Lisa Cartier-Giroux
Assistant United States Attorneys
501 Las Vegas Blvd. South
Suite 1100
Las Vegas, NV 89101

*/s/ Sylvia Irvin*
Assistant Federal Public Defender